## STATE *v.* JAMES B. LANIER.

Riding unarmed through a Court House, after the Court has adjourned and the crowd gone home, may or may not be a criminal offence, according to circumstances. It is for the jury to say, whether or not it was done in such manner and in such presence and at such time as would make the offence criminal.

(*State* v, *Huntly*, 3 Ired. cited and approved.)

INDICTMENT for an affray in riding a horse through the court house, tried before *Cloud, J.*, at the Spring Term, 1874, of DAVIE Superior Court.

On the trial below, under the directions of the Court, the jury found the defendant guilty, and from the refusal of his Honor to grant a new trial, the defendant appealed.

The evidence is sufficiently stated in the opinion of the Court.

*McCorkle & Bailey*, for defendant.
*Attorney General Hargrove*, for the State.

SETTLE, J. The elementary writers say that the offence of going armed with dangerous or unusual weapons is a crime against the public peace by terrifying the good people of the land, and this Court has declared the same to be the common law in *State* v. *Huntley*, 3 Ired. 418. It is evident that the indictment before us was drawn upon the assumption that the facts in the case would bring it within the spirit of this offence. Only two witnesses were examined upon the trial, both on behalf of the State. One of them testified that he was in the sheriff's room, on the side of the passage of the court room, and heard an unusual noise, when he opened the door and ran out and saw the defendant on horseback passing out of the north door of the passage of the court house. This was after Court had adjourned in the evening. That the defendant was preparing to ride in again, when he was met and stopped by the sheriff, and he then rode off. From the noise, the witness judged that he rode through the passage of the court house in a canter. Witness thought the defendant was drunk, but had no reason for so thinking except that he would not have ridden through the court house if he had been sober. Witness also swore that he saw a good many persons in the street near enough to have heard the noise occasioned by riding through the passage.

The other witness testified that Court had adjourned for the day and that it was late in the afternoon. He was up stairs in the court room and heard the noise below and started down to see what it was ; saw the defendant at the south door, who said to him, " clear the track, the rider is up," the defendant at the same time laughing ; that the people had generally gone home and no one was present but Clouse, the other witness for the State. Witness said to defendant, " don't ride through here any more." Defendant replied, " well I won't," and rode off, being in a perfect good humor. Witness saw no arms of any kind.

His Honor instructed the jury that if they believed the tes-

timony of either one of the witnesses, they must return a verdict of guilty.

While this was very bad behavior by the defendant, we cannot say, as a conclusion of law, that the evidence makes him guilty of a criminal offence.

In this case we attach no importance to the fact that the defendant had no arms, for we think it may be conceded that the driving or riding without arms through a court house or a crowded street at such a rate or in such a manner as to endanger the safety of the inhabitants amounts to a breach of the peace and is an indictable offence at common law.  *United States* v. *Hart*, 1 Pet. C. C. R. 390.

But does the proof in this case sustains the allegations of the indictment ?

We conceive that the riding through a court house or a street at 12 o'clock at night, when no one is present, is a very different thing from riding through at 12 o'clock in the day, when the court house or street is full of people.

The same act may be criminal or innocent, according to the surrounding circumstances.  Here it seems, according to both witnesses, that only they and the sheriff were actually present, though one witness stated that he saw a good many persons in the street near enough to have heard the noise.

We think his Honor should have left it to the jury to say whether under all the circumstances the defendant was guilty or not guilty.

There is error, which entitles the defendant to a *venire de novo.*

PER CURIAM.                                          *Venire de novo.*