STATE OF NORTH CAROLINA v. BILLY ASHLEY TRIPP

No. 7010SC581

(Filed 21 October 1970)

1. **Assault and Battery § 5—— discharge of firearm into an automobile — sufficiency of evidence**

    In a prosecution charging defendant with the unlawful discharge of a firearm into a moving automobile driven by the prosecuting witness, the State's evidence was sufficient to withstand defendant's motion for nonsuit. G.S. 14-34.1.

2. **Assault and Battery §§ 5, 15; Arrest and Bail § 1— discharge of firearm into automobile — arrest by private citizen — breach of peace — instructions**

    In a prosecution charging defendant with the unlawful discharge of a firearm into a moving automobile driven by the prosecuting witness, defendant's evidence justified an instruction to the jury that at the time of the shooting he had a right to arrest the prosecuting witness for a breach of the peace and that he was attempting to carry out this right when he fired his pistol at the automobile, where the evidence tended to show that (1) the defendant, hiding in the back

seat of his wife's car, accompanied the wife to her place of employ-
ment in order to learn the identity of the man who had been proposi-
tioning her; (2) as the wife approached the plant, the prosecuting
witness drove his car in such a manner as to force the wife to drive
upon the curb and stop; (3) the defendant got out of his car and
ordered the prosecuting witness to stop; (4) the witness attempted
to run over the defendant; and (5) the defendant then fired his pistol
at the witness' fleeing car "trying to bust a tire or gas tank so I could
stop his car and take him to the police station." G.S. 14-34.1, G.S. 15-39.

3. **Arrest and Bail § 1— arrest by private citizen — breach of peace — time of arrest**

The right of a private citizen to arrest for a breach of the peace
exists while it is continuing or immediately after it has been committed.
G.S. 15-39.

4. **Arrest and Bail §§ 1, 5— arrest by private citizen — amount of force**

A private citizen making or attempting to make a lawful arrest
may use reasonable force in making the arrest, and whether the force
used in any particular case is reasonable and necessary or excessive
and unnecessary is ordinarily a question for the jury.

APPEAL by defendant from *Bailey, J.,* 1 May 1970 (R)
Criminal Session, WAKE Superior Court.

A bill of indictment proper in form charged that on 18
March 1970 defendant "unlawfully, wilfully, wantonly and fel-
oniously did attempt to discharge and did discharge a firearm"
into a 1962 Chevrolet automobile while occupied by Joseph Law-
rence Freeman in violation of G.S. 14-34.1. Defendant pleaded
not guilty to the charge.

Pertinent evidence presented by the State tended to show:
Around 8:00 p.m. on 18 March 1970, Joseph Lawrence Freeman
(Freeman), a Negro male, was alone and driving his 1962
Chevrolet convertible north on Person Street in the City of
Raleigh. When he reached intersection of Person and Davie
Streets, he turned left and proceeded on Davie. A Ford fastback
was parked on the right hand side of Davie about halfway be-
tween Person and Blount Streets. As Freeman approached the
parked Ford, defendant with a small gun in his hand jumped
out of the Ford into Davie Street and yelled at Freeman to stop.
Freeman did not stop but passed on by the Ford at which time
defendant shot at Freeman several times, one bullet going into
his car, and two others striking the rear of the car. Freeman put
his head down, made a left turn on to Blount Street, and ran
into another car shortly thereafter, following which he jumped
from his car and ran. Freeman denied having ever seen the de-

fendant or his wife prior to that evening and denied writing defendant's wife any note.

Defendant's evidence is summarized as follows: On 17 and 18 March 1970 defendant's wife (Mrs. Tripp), a white woman, was employed at a small plant on Person Street a short distance south of the Davie Street intersection. When she returned from lunch on 17 March 1970, a young Negro male driving a black and white Chevrolet convertible, accompanied by another Negro male, drove up behind her. Mrs. Tripp went back to work and on returning to her car at 4:30 p.m., she found under her windshield wiper a note informing her that the writer would like to know her and asking her to meet him in front of the plant that night at 8:00. Mrs. Tripp did not tell her husband about the note and returned to work the next day. At lunchtime she drove her car to a Quik-Pik in the area and on the way there observed that a 1962 Chevrolet convertible was following her. After coming out of the Quik-Pik, she got in her car and the Chevrolet convertible drove up beside her. She did not know the name of the driver at that time but after the incident charged determined that it was Freeman. Mrs. Tripp had her windows closed and doors locked and Freeman knocked on the glass of her car. She shook her head at Freeman and hurriedly returned to the parking lot at the plant; as she entered the plant she saw the Chevrolet convertible pass by. That afternoon as she left her work and returned to her car, she found another note on her windshield in which the writer made reference to seeing her at the Quik-Pik and also seeing her the day before; the writer expressed his desire to see and talk with her and invited her to meet him that night at 8:00 p.m. at the plant. Mrs. Tripp hurried home, told her husband what had happened on both days and showed him the notes but was unable to provide the name of the person who had accosted her. Defendant went to the Raleigh Police Station, talked with a detective there about his wife's ordeals but preferred no charges because of inability to name the accoster; thereafter he returned home. Defendant insisted that Mrs. Tripp drive their car, with defendant concealed in the back seat, to the plant at 8:00 p.m. in order that she might get the license number on the Chevrolet convertible and that he and a friend might try to catch the person who was later determined to be Freeman and turn him over to police. Mrs. Tripp drove by the plant on Person Street at about 8:00 p.m., observed the Chevrolet convertible in the area, and obtained the license number. Following that the events hereinafter related in the opinion took place.

The jury found the defendant guilty as charged and from prison sentence of not less than two nor more than four years with recommendation that defendant be granted the option of serving his sentence under the work-release program, defendant appealed.

*Attorney General Robert Morgan by Assistant Attorney General Howard P. Satisky for the State.*

*William T. McCuiston and Michael A. Ashburn for defendant appellant.*

BRITT, Judge.

[1] Defendant first assigns as error the failure of the court to sustain his motion for nonsuit interposed at the close of all of the evidence. We hold that the evidence was sufficient to survive the motion for nonsuit and the assignment of error is overruled.

[2] Defendant assigns as error the following instruction of the trial judge to the jury: "The defendant in this case had no right and no duty to arrest anyone or to take anyone to the police. He was not acting, if he did act, in any proper exercise or lawful authority." This assignment of error is sustained and entitles defendant to a new trial.

Defendant contends that under the evidence introduced by him he had a right and duty to arrest Freeman and was attempting to carry out this right and duty when he fired his pistol at Freeman's automobile. To properly consider this contention, it is necessary to review defendant's evidence as it related to the shooting and events *immediately* prior thereto. This evidence tended to show:

With defendant lying on the floor of the back seat, Mrs. Tripp was driving his automobile north on Person Street and stopped for a red traffic signal at the intersection of Davie Street. Freeman was then parked on Person Street, facing north, some four or five car lengths south of the intersection. When the light turned green Mrs. Tripp turned left on Davie Street; Freeman drove from his parked position north on Person to Davie where he made a left turn, drove up beside Mrs. Tripp on her left and turned sharply to the right, causing Mrs. Tripp to turn to the right, run up on the curb and stop at a point about halfway between Person and Blount Streets. Freeman's car

was then stopped at a forty-five degree angle with his right front fender very close to Mrs. Tripp's door; Mrs. Tripp was crying. Defendant jumped out of the right side of his car and as he ran around the front of his car, Freeman backed away from defendant's car and started forward on Davie Street. Defendant ordered Freeman to stop but instead of stopping Freeman tried to run over defendant who got out of his way and then fired a .22 calibre pistol at Freeman's car "trying to bust a tire or gas tank so I could * * * * stop his car and take him to the police station." Freeman proceeded on to Blount Street where he made a left turn and wrecked his automobile before getting to the next intersection.

With respect to the defendant's original plan to catch Freeman and carry him to the police, we agree with the trial judge that the defendant had no right and no duty to arrest anyone. However, when the events developed as above testified to by the defendant and his witnesses, a different situation arose.

G.S. 15-39 provides as follows:

"Persons present may arrest for breach of peace.—Every person present at any riot, rout, affray or other breach of the peace, shall endeavor to suppress and prevent the same, and, if necessary for that purpose, shall arrest the offenders."

In *State v. Mobley*, 240 N.C. 476, 83 S.E. 2d 100, in an opinion by Johnson, J., our Supreme Court in interpreting this statute said:

"This statute confers on peace officers and private persons, on equal terms, the power of arrest without warrant in certain misdemeanor cases. The statute follows in the main the pre-existing principles of the common law. (Statute quoted) * * * * * the power of arrest without warrant is referable entirely to the question of breach of the peace. The test is not whether the offense is a misdemeanor, but, rather, whether an arrest is necessary in order to 'suppress and prevent' a breach of the peace. * * * * * It's (the statute) language is plain and clear. An arrest without warrant may be made under the provisions of this statute by anyone when it is necessary to 'suppress and prevent' a breach of the peace. This means that either a peace officer or a private person may arrest anyone who in his presence is (1) actually committing or (2) threatening to commit a breach of the

peace. * * * * * [W]e think a breach of the peace is threatened within the meaning of the statute if the offending person's conduct under the surrounding facts and circumstances is such as reasonably justifies a belief that the perpetration of an offense amounting to a breach of the peace is imminent. (Numerous authorities cited)."

In *State v. Lanier,* 71 N.C. 288 (1874) our Supreme Court, in passing upon the legality of an arrest by a police officer under this statute, found it appropriate to determine if the facts in that case constituted a breach of the peace. The facts were that the defendant rode a horse through the corridor of the court house when court was not in session and very few people were in the court house. We quote from the opinion:

"* * * * * [W]e think it may be conceded that the driving or riding without arms through a court house or crowded street at such a rate or in such a manner as to endanger safety of the inhabitants amounts to a breach of the peace and is an indicable offence at common law. (citation)."

If Freeman drove his car on Davie Street as stated by defense witnesses, forcing Mrs. Tripp to drive on the curb and stop, and stopping with his (Freeman's) right front fender close to her door, we think he was guilty of a breach of the peace justifying his arrest by the defendant or anyone else present at the time.

[3] The question then arises, does a person have the right to complete a citizen's arrest after the breach of the peace has terminated? It has been held that a private person's right to arrest for an affray or breach of the peace exists while it is continuing *or immediately after it has been committed.* 5 Am. Jur. 2d Arrest § 35, p. 725; *Ogulin v. Jeffries,* 121 Cal. App. 2d 211, 263 P. 2d 75. If a person's right to arrest for a breach of the peace committed in his presence terminated immediately when the breach of the peace ceased, the right of arrest would be completely negated.

[4] We next inquire as to the amount of force a person may use in making a citizen's arrest. Our Supreme Court has held that a police officer may use reasonable and necessary force in making an arrest, and whether the force used in any particular case is reasonable and necessary or excessive and unnecessary is ordinarily a question for the jury. *State v. Eubanks,* 209 N.C.

758, 184 S.E. 839. We think the same rule applies to a private citizen making or attempting to make a lawful arrest.

Freeman, as a witness for the State, denied writing the notes to Mrs. Tripp and denied that he forced her to stop on Davie Street. This being true, it was for the jury to reconcile the conflict in the testimony and to determine, upon proper instructions from the trial judge, if the defendant was properly exercising a right of arrest under G.S. 15-39 and if he was using no more force than was reasonably necessary to accomplish that purpose.

We realize that a citizen's arrest or attempted arrest can create a dangerous situation and that one who attempts it does so at his peril. However, G.S. 15-39 is a law of this State and citizens are entitled to rely on it and our courts are obligated to apply and interpret it until the General Assembly sees fit to amend or repeal.

We do not deem it necessary to discuss the other assignments of error brought forward and argued in defendant's brief as they may not arise on a re-trial of this case.

For the reasons hereinbefore stated, the defendant is awarded a

New trial.

Judges CAMPBELL and VAUGHN concur.