EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Apelante<br><br>v.<br><br>Roberto Rodríguez López<br><br>Apelado<br>_____<br><br>El Pueblo de Puerto Rico<br><br>Apelante<br><br>v.<br><br>Luis Rivera Caraballo<br><br>Apelado<br>_____<br><br>El Pueblo de Puerto Rico<br><br>Apelante<br><br>v.<br><br>Alvin Rodríguez Rodríguez<br><br>Apelado | Apelación<br><br>2022 TSPR 128<br><br>210 DPR ____ |

Número del Caso: AC-2017-103

Fecha: 28 de octubre de 2022

Tribunal de Apelaciones:

    Región Judicial de Bayamón- Aibonito, Panel VI

Oficina del Procurador General:

    Lcdo. Luis Román Negrón
    Procurador General

    Lcdo. Isaías Sánchez Báez
    Procurador General Interino

    Lcdo. Juan B. Ruiz Hernández
    Procurador General Auxiliar

    Lcda. Daphne M. Cordero Guilloty
    Procuradora General Auxiliar

Abogados de las partes apeladas:

    Lcdo. Alberto Rivera Ramos
    Lcdo. Orlando J. Aponte Rosario
    Lcda. Mayra E. López Mulero

Materia:  Derecho Constitucional - Constitucionalidad del Art. 5.04 de la Ley de Armas de 2000.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>    Apelante<br><br>       v.<br><br>Roberto Rodríguez López<br><br>    Apelado<br>_____<br><br>El Pueblo de Puerto Rico<br><br>    Apelante<br><br>       v.<br><br>Luis Rivera Caraballo<br><br>    Apelado<br>_____<br><br>El Pueblo de Puerto Rico<br><br>    Apelante<br><br>       v.<br><br>Alvin Rodríguez Rodríguez<br><br>    Apelado | AC-2017-0103 |

Opinión del Tribunal emitida por el Juez Asociado SEÑOR COLÓN PÉREZ.

En San Juan, Puerto Rico, a 28 de octubre de 2022.

En el presente caso tenemos la oportunidad de expresarnos, por primera vez, sobre la constitucionalidad del Art. 5.04 de la Ley de Armas de Puerto Rico de 2000, *infra,* ello al amparo de lo dispuesto en la Segunda Enmienda de la Constitución de los Estados Unidos de América, *infra*, y su jurisprudencia interpretativa.

Adelantamos que, tras aplicar el análisis adoptado recientemente por el Tribunal Supremo de los Estados Unidos en *New York State Rifle & Pistol Association, Inc. v. Bruen*, *infra*, lo dispuesto en el Art. 5.04 de la Ley de Armas de Puerto Rico de 2000, *infra*, no contraviene el derecho reconocido en la Segunda Enmienda de la Constitución federal, *infra*.[1] Veamos.

I.

Allá para los meses de diciembre de 2015 y enero de 2016, el Ministerio Público presentó sendas denuncias en contra de los señores Luis Rivera Caraballo (en adelante, "señor Rivera Caraballo"), Alvin Rodríguez Rodríguez (en adelante, "señor Rodríguez Rodríguez") y Roberto Rodríguez López (en adelante, "señor Rodríguez López"), por infracción a los Arts. 5.01 (fabricación, importación, venta y distribución de armas), 5.04 (portación y uso de armas de fuego sin licencia) y 6.01 (fabricación, distribución, posesión y uso de municiones) de la Ley de Armas de Puerto Rico de 2000, *infra*, por ser este último el estatuto vigente a la fecha de los hechos que originaron el presente litigio. Celebrada la vista correspondiente, el Tribunal de Primera Instancia determinó causa probable para arresto en contra de éstos por los delitos imputados en las denuncias.

---

[1] El tiempo transcurrido en resolver este caso se debió a que tomamos conocimiento de que el Máximo Foro Judicial federal se encontraba atendiendo un caso de similar naturaleza al de marras. Habiendo dicho Foro federal finalmente establecido el análisis que se debe emplear al momento de atender un reclamo al amparo de la Segunda Enmienda de la Constitución de Estados Unidos, Emda. II, Const. EE. UU., LPRA, Tomo I, ed. 2016, hoy nos encontramos en mejor posición para disponer de las controversias que nos ocupan.

Así las cosas, días más tarde, el señor Rodríguez López presentó ante el foro primario una *Urgente moción invocando el derecho fundamental de todos los ciudadanos de los Estados Unidos de Norteamérica para poseer y portar armas al amparo de la Segunda Enmienda de la Constitución de los Estados Unidos de Norteamérica y del debido proceso de ley esbozado en la Decimocuarta Enmienda de la Constitución de los Estados Unidos de Norteamérica y solicitando se declare inconstitucional la Ley de Armas de Puerto Rico.* En dicho escrito, éste peticionó la desestimación de las denuncias en su contra al amparo de la Regla 64(b) de Procedimiento Criminal, 34 LPRA Ap. II, R. 64(b). En particular, el señor Rodríguez López argumentó que, conforme a lo resuelto por este Tribunal en *Pueblo v. Sánchez Valle,* 192 DPR 594 (2015), el Estado Libre Asociado de Puerto Rico carecía de jurisdicción para encausarle criminalmente por infracción a los Arts. 5.01, 5.04 y 6.01 de la Ley de Armas de Puerto Rico de 2000, *infra*.

Asimismo, adujo que los precitados artículos de la Ley de Armas de Puerto Rico de 2000, *infra*, eran inconstitucionales, pues restringían el derecho constitucional de la ciudadanía a portar armas según consagrado en la Segunda Enmienda de la Constitución de los Estados Unidos, *infra*. Al respecto, añadió que, según resuelto por el Tribunal Supremo de los Estados Unidos, dicho derecho era extensivo a los Estados y sus territorios por vía de lo dispuesto en la Decimocuarta Enmienda de la Constitución de los Estados Unidos. Igual reclamo hicieron los señores Rivera

Caraballo y Rodríguez Rodríguez ante el Tribunal de Primera Instancia.

Enterado de ello, el Ministerio Público se opuso a la solicitud de desestimación presentada por los señores Rodríguez López, Rivera Caraballo y Rodríguez Rodríguez. En esencia, argumentó que lo resuelto por este Foro en el caso de *Pueblo v. Sánchez Valle, supra,* era inaplicable al presente litigio. Asimismo, sostuvo que la Ley de Armas de Puerto Rico de 2000, *infra,* no contravenía la Segunda Enmienda de la Constitución de los Estados Unidos, *infra*, ni la jurisprudencia aplicable, ya que el referido derecho constitucional no era de carácter absoluto.

Examinados los planteamientos de ambas partes, el foro primario declaró no ha lugar las mociones de desestimación ante su consideración. Al así hacerlo, concluyó que la opinión emitida por este Tribunal en *Pueblo v. Sánchez Valle, supra*, no era aplicable al caso de autos y, acto seguido, adoptó por persuasiva cierta *Sentencia* emitida por el Tribunal de Apelaciones, allá para el 26 de febrero de 2016, en el caso *Rodríguez v. Estado Libre Asociado de Puerto Rico,* KLAN201501423.[2] En la referida *Sentencia*, el foro apelativo intermedio señaló que el derecho a poseer y portar armas reconocido en la Segunda Enmienda de la Constitución de los Estados Unidos, *infra*, no era absoluto ni ilimitado y que la

---

[2] Dicha sentencia fue dictada por los Jueces de Apelaciones Brau Ramírez, Bermúdez Torres y Sánchez Ramos.

Ley de Armas de Puerto Rico de 2000, *infra,* no conllevaba una carga sustancial al mismo.

Inconformes con el dictamen emitido por el Tribunal de Primera Instancia, los señores Rivera Caraballo, Rodríguez Rodríguez y Rodríguez López recurrieron al Tribunal de Apelaciones mediante recurso de *certiorari.* Allí, señalaron que el foro primario erró al no declarar inconstitucional los referidos artículos de la Ley de Armas de Puerto Rico de 2000, *infra,* cuando en su aplicación éstos violentaban el derecho fundamental a poseer y portar armas dispuesto en la Segunda Enmienda de la Constitución de los Estados Unidos, *infra,* según reconocido en *District of Columbia v. Heller, infra,* y en *McDonald v. City of Chicago, infra.* Ello, pues, a su entender, la Ley de Armas de Puerto Rico de 2000, *infra,* en su aplicación se convertía en una prohibición absoluta a su derecho a poseer y portar armas, que les exponía a ser encarcelados por haber ejercido su derecho constitucional.

Expedidos los recursos de *certiorari* y paralizados los procedimientos ante el Tribunal de Primera Instancia, las partes solicitaron la consolidación de sus respectivos casos. El foro apelativo intermedio accedió a lo solicitado.

Posteriormente, el Pueblo de Puerto Rico, por medio del Procurador General, presentó ante el Tribunal de Apelaciones un alegato en el cual adujo que los señores Rivera Caraballo, Rodríguez Rodríguez y Rodríguez López carecían de legitimación activa para presentar el mismo. Fundamentó lo anterior, en que la protección consagrada en la Segunda Enmienda de la

Constitución de los Estados Unidos, *infra*, se ceñía únicamente a la reglamentación aplicable a la solicitud de un permiso para portar armas, a los efectos de que no podía ser irrazonable, por lo que no incidía en el encausamiento criminal. Arguyó además que, como la Ley de Armas de Puerto Rico de 2000, *infra,* no restringía ni prohibía totalmente el derecho de un individuo para portar armas de fuego, -- sino que regulaba los requisitos para la obtención de la licencia para poseer armas y del permiso para portar armas --, su constitucionalidad debía ser evaluada aplicando un escrutinio intermedio.

Examinados los alegatos de ambas partes, el foro apelativo intermedio decidió llamar el caso a una Vista Oral, la cual fue celebrada el 17 de agosto de 2016. Durante la mencionada vista, ambas partes tuvieron la oportunidad de argumentar *in extenso* sobre las controversias ante la consideración de dicho foro.

Por su parte, el Procurador General reconoció el derecho a poseer y portar armas como uno fundamental. Sin embargo, señaló que el Estado legítimamente puede establecer límites al ejercicio del mismo y reglamentar la forma en que las armas "están en la calle", en especial cómo se venden. Por otra parte, los señores Rodríguez López, Rivera Caraballo y Rodríguez Rodríguez insistieron, entre otras cosas, en la inconstitucionalidad de la Ley de Armas de Puerto Rico de 2000, *infra*, y adujeron que la restricción al referido derecho fundamental debe estar sujeta a un escrutinio estricto.

Tras evaluar los argumentos presentados por las partes en la referida Vista Oral, así como en sus respectivos alegatos, el Tribunal de Apelaciones dictó una *Sentencia*. Al así hacerlo, en primer lugar, determinó que el procesamiento criminal al que estaban expuestos los señores Rivera Caraballo, Rodríguez López y Rodríguez Rodríguez les confería un interés legítimo suficiente para concluir que éstos tenían legitimación activa para incoar el presente litigio.

Atendido el asunto jurisdiccional, el foro apelativo intermedio concluyó que por considerarse el derecho a poseer y portar armas un derecho fundamental, según reconocido por el Tribunal Supremo de los Estados Unidos en *McDonald v. City of Chicago*, *infra*, el mismo era extensivo a Puerto Rico por medio de la Decimocuarta Enmienda de la Constitución de los Estados Unidos, *infra*, de modo que, -- contrario a lo señalado por la Oficina del Procurador General --, las restricciones a este derecho debían satisfacer un escrutinio estricto. Razonó que la restricción sobre este derecho dispuesta en el Art. 5.04 (portación y uso de armas de fuego sin licencia) de la Ley de Armas de Puerto Rico de 2000, *infra*, era inconstitucional de su faz y en su aplicación, toda vez que constituía una prohibición absoluta al derecho a poseer y portar armas.

De otro lado, y en lo relacionado a los Arts. 5.01 (fabricación, importación, venta y distribución) y 6.01 (fabricación, distribución, posesión y uso de municiones) de la Ley de Armas de Puerto Rico de 2000, *infra*, el Tribunal de

Apelaciones sostuvo que éstos debían ser evaluados a la luz de un escrutinio intermedio, pues los mismos no se centran en una limitación a la posesión y portación de armas, sino a la venta y distribución de armas, las cuales no son actividades protegidas por la Segunda Enmienda de la Constitución de los Estados Unidos, *infra*. Al aplicar el escrutinio intermedio a los referidos artículos de la Ley de Armas de Puerto Rico de 2000, *infra*, el foro apelativo intermedio determinó que éstos no conllevan una carga sustancial al derecho a poseer y portar armas y proveen un mecanismo efectivo para viabilizar el interés del Estado de disminuir la violencia asociada con el trasiego ilegal de armas.

Insatisfecho con lo resuelto por el Tribunal de Apelaciones, el Procurador General recurre ante nos mediante recurso de apelación y solicita que revoquemos la *Sentencia* emitida por dicho foro. En esencia, aduce que el foro apelativo intermedio erró al evaluar la controversia relacionada a la constitucionalidad del Art. 5.04 de la Ley de Armas de Puerto Rico de 2000, *infra*, bajo el crisol de un escrutinio estricto, cuando ésta no es una restricción o prohibición absoluta del derecho de un individuo a poseer y portar un arma de fuego.[3] A dicha solicitud, y bajo fundamentos

---

[3] Es menester señalar que, el Procurador General adujo, además, que los señores Rodríguez Caraballo, Rodríguez Rodríguez y Rodríguez López carecían de legitimación activa para impugnar la constitucionalidad del Art. 5.04 de la Ley de Armas de Puerto Rico de 2000, *infra*, pues éstos no habían establecido que en algún momento hubiesen intentado obtener una licencia para poseer y portar armas, ni que se les hubiese denegado la concesión de la misma. No le asiste la razón.

similares a los expuestos ante los foros *a quo*, los señores Rodríguez López, Rivera Caraballo y Rodríguez Rodríguez se opusieron.

Contando con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II.

Como es sabido, la Ley Núm. 404-2000, según enmendada, conocida como Ley de Armas de Puerto Rico (en adelante, "Ley de Armas de Puerto Rico de 2000"), 25 LPRA ant. sec. 455 *et seq.*, se creó con la intención de unificar los requisitos para la concesión de licencias para tener, poseer y portar armas; establecer sanciones y multas; crear un registro de municiones; así como para establecer las sentencias por violaciones a esta ley, entre otras regulaciones. Lo anterior, tuvo el propósito de promover la política pública de cero tolerancia contra el crimen.

---

Se considera que una parte tiene legitimación activa cuando ésta haya sufrido un daño claro y palpable; el daño sea inmediato y preciso, no abstracto ni hipotético; exista una conexión entre la causa de acción ejercitada y el daño alegado; y la causa de acción surja al amparo de la Constitución o de alguna ley. *Lozada Sánchez v. JCA,* 184 DPR 898, 916-921 (2012); *Lozada Tirado v. Testigos de Jehová,* 177 DPR 893, 924 (2010); *Hernández Torres v. Hernández Colón*, 129 DPR 824, 835 (1992). Cuando una parte reclama ante un tribunal sin cumplir con estos criterios, su reclamo no es justiciable y procede la desestimación. El propósito de esta doctrina es que el tribunal se asegure de que, en toda acción que se presente ante su consideración, el reclamante tenga un interés genuino y que va a proseguir su causa de forma vigorosa. *Sánchez et al. v. Srio. de Justicia et al.*, 157 DPR 360, 371 (2002); *Hernández Agosto v. Romero Barceló*, 112 DPR 407, 413 (1982).

Tal como lo señaló el Tribunal de Apelaciones, los señores Rivera Caraballo, Rodríguez Rodríguez y Rodríguez López fueron denunciados al amparo del Art. 5.04 de la Ley de Armas de Puerto Rico de 2000, *infra*, por lo que han sufrido un daño claro y palpable, inmediato y preciso, no abstracto ni hipotético como consecuencia de la aplicación del estatuto en cuestión. Siendo ello así, éstos podían impugnar la constitucionalidad de los referidos estatutos.

En lo relacionado al proceso para expedir una licencia de armas, el referido cuerpo de ley dispuso que el Superintendente de la Policía es el funcionario público encargado de expedir las licencias que le permiten a un ciudadano o una ciudadana poseer un arma de fuego en Puerto Rico, en la medida en que éste o ésta cumpla con determinados requisitos para ello. Art. 2.02 de la Ley de Armas de Puerto Rico de 2000, 25 LPRA ant. sec. 456. En términos generales, la aludida licencia permite al ciudadano o ciudadana la posesión, tenencia y transportación de armas, sujeto a ciertos requisitos relacionados a número, modo de almacenaje, función gubernamental que desempeña -- si alguna -- y otros.

De otra parte, y para que una persona pueda válidamente portar en su persona un arma de fuego en nuestra jurisdicción, es necesario que -- además, de tener una licencia para poseer armas -- obtenga un permiso que contenga una disposición expresa a esos efectos, lo cual solamente podrá ocurrir si el tribunal así lo autoriza. Art. 2.05 de la Ley de Armas de Puerto Rico de 2000, 25 LPRA ant. sec. 456d. En estos escenarios, se requiere una notificación previa al Ministerio Público y la celebración de una audiencia, de este último así requerirlo. *Íd.* Para efectos de la Ley de Armas de Puerto Rico de 2000, *supra*, el término *portación* significa "la posesión inmediata o la tenencia física de un arma, cargada o descargada, sobre la persona del portador". 25 LPRA ant. sec. 455(s).

Dicho ello, y en lo pertinente a la controversia que nos ocupa, el Art. 5.04 de la Ley de Armas de Puerto Rico de 2000, 25 LPRA sec. 458c, regulaba todo lo relacionado a la portación y uso de armas de fuego sin licencia. Específicamente, el precitado artículo disponía que:

> **Toda persona que transporte cualquier arma de fuego o parte de ésta, sin tener una licencia de armas, o porte cualquier arma de fuego sin tener su correspondiente permiso para portar armas, incurrirá en delito grave y convicta que fuere, será sancionada con pena de reclusión por un término fijo de diez (10) años,** sin derecho a sentencia suspendida, a salir en libertad bajo palabra, o a disfrutar de los beneficios de algún programa de desvío, bonificaciones o alternativa a la reclusión reconocida en esta jurisdicción, debiendo cumplir en años naturales la totalidad de la pena impuesta. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de veinte (20) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de cinco (5) años.
>
> No obstante, cuando se trate de una persona que (i) esté transportando o portando un arma de fuego que está registrada a su nombre, (ii) tenga una licencia de armas o permiso para portar armas expedido a su nombre que está vencido o expirado, (iii) no se le impute la comisión de cualquier delito grave que implique el uso de violencia, (iv) no se le impute la comisión de un delito menos grave que implique el uso de violencia, y (v) el arma de fuego transportada o portada no esté alterada ni mutilada, dicha persona incurrirá en un delito menos grave y, a discreción del Tribunal, será sancionada con una pena de cárcel que no excederá de seis (6) meses o una multa de cinco mil dólares ($5,000.00).
>
> Disponiéndose, que también incurrirá en un delito menos grave que será sancionado, a discreción del Tribunal, con una pena de cárcel que no excederá de seis (6) meses o una multa de cinco mil dólares ($5,000.00), toda persona que esté transportando un arma de fuego sin tener licencia para ello que no cumpla con los requisitos (i) y (ii) del párrafo anterior, pero que cumpla con los requisitos (iii), (iv) y (v), y que además pueda demostrar con preponderancia de la prueba que advino en posesión de dicha arma de fuego por vía de herencia o legado,

y que el causante de quien heredó o adquirió el arma por vía de legado tuvo en vida una licencia de armas. El Tribunal, a su discreción, podrá imponer la pena de prestación de servicios en la comunidad en lugar de la pena de reclusión establecida.

Cuando el arma sea una neumática, pistola o artefacto de descargas eléctricas, de juguete o cualquier imitación de arma y ésta se portare o transportare con la intención de cometer delito o se usare para cometer delito, la pena será de reclusión por un término fijo de cinco (5) años. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de diez (10) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de un (1) año.

Se considerará como "atenuante" cuando el arma esté descargada y la persona no tenga municiones a su alcance.

Se considerará como "agravante" cualquier situación en la que el arma ilegal se utilice en la comisión de cualquier delito o su tentativa. Cuando una persona con licencia de armas vigente transporte cualquier arma de fuego o parte de ésta sin tener su licencia consigo incurrirá en una falta administrativa y será sancionada con una pena de multa de doscientos cincuenta dólares ($250.00). (Énfasis suplido). Art. 5.04 de la Ley de Armas, *supra*.

De una lectura del precitado precepto, queda claro que, con su aprobación y en nuestra jurisdicción, lo que el legislador pretendió asegurar fue el cumplimiento con el esquema de licenciamiento y permiso establecido en esta ley, a la vez que especificó las consecuencias penales que acarrea el no hacerlo. De ahí que el delito de portación ilegal y uso de ésta conlleva, "como elemento esencial e imprescindible, una ausencia de autorización para la correspondiente portación de arma". *Pueblo v. Negrón Nazario*, 191 DPR 720, 752 (2014). La norma reiterada es, pues, que la ausencia de la licencia para la posesión y/o de permiso para la portación de armas no

constituye una defensa afirmativa. *Pueblo v. Rivera*, 73 DPR 440 (1952).

Con lo anterior en mente, nos corresponde entonces examinar la constitucionalidad o no del precitado Art. 5.04 de la Ley de Armas de Puerto Rico de 2000, *supra*, al amparo de la Segunda Enmienda de la Constitución de los Estados Unidos, *infra*. Procedemos a así hacerlo.

                                III.

Sabido es que, en virtud de lo dispuesto en la Decimocuarta Enmienda de la Constitución federal, Emda. XIV, Const. EE. UU., LPRA, Tomo I, ed. 2016, el Tribunal Supremo de los Estados Unidos, por medio de la doctrina de incorporación selectiva, ha hecho extensivo a los estados de la Unión los derechos fundamentales consagrados en las primeras ocho enmiendas de esa Constitución, conocida como la Carta de Derechos (*Bill of Rights*). *Washington v. Texas,* 388 US 14, 18 (1967); *Malloy v. Hogan,* 378 US 1, 5-6 (1964); *Gideon v. Wainwright,* 372 US 335, 341 (1963).

En Puerto Rico, aunque no somos propiamente un Estado, el Máximo Foro Judicial federal nos ha reconocido los mismos derechos fundamentales que la Decimocuarta Enmienda, *supra*, extendió a los ciudadanos y las ciudadanas de los estados de la Unión. Véase, *Examining Bd. v. Flores de Otero*, 426 US 572, 599-601 (1976); *Balzac v. Porto Rico,* 258 US 298, 312-313 (1922); *Downes v. Bidwell,* 182 US 244, 283-284 (1901). Véase, además, *Torres v. Puerto Rico*, 442 US 465, 471 (1979); *Caledo-*

*Toledo v. Pearson Yacht Leasing Co.,* 416 US 663, 668 esc. 5 (1974).

Precisamente, el derecho fundamental a poseer y portar armas, contemplado en la Segunda Enmienda de la Constitución de los Estados Unidos, Emda. II, Const. EE. UU., LPRA, Tomo I, ed. 2016, es uno de los que se nos han hecho extensivos. Específicamente, la precitada enmienda constitucional dispone que, siendo necesario para la seguridad de un Estado libre, una milicia bien organizada, no se coartará el derecho del pueblo a poseer y portar armas ("A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed"). *Íd.*

En *District of Columbia v. Heller*, 554 US 570 (2008), el Tribunal Supremo de los Estados Unidos tuvo la oportunidad de dilucidar, por primera vez, el alcance de la Segunda Enmienda de la Constitución federal, *supra*. En esa ocasión, el Máximo Foro Judicial federal evaluó la constitucionalidad de una disposición de la ley de armas del Distrito de Columbia que prohibía de manera absoluta la posesión de armas cortas en el hogar. En específico, el estatuto en cuestión prohibía el registro de armas cortas y exigía que cualquier arma en el hogar tenía que estar descargada y desmontada o se debía utilizar un *trigger lock*, haciendo inoperable dicho objeto.

En el precitado caso, al examinar el texto de la referida disposición constitucional y realizar un análisis histórico e interpretativo de la misma, el Tribunal Supremo de los Estados

Unidos aclaró, como cuestión de umbral, que la Segunda Enmienda, *supra*, garantizaba un derecho individual a poseer y portar armas,[4] razón por la cual una prohibición absoluta, como la que se establecía en la ley allí impugnada, constituía una violación a ese derecho. *Íd.* Así, el referido Foro razonó que la Segunda Enmienda de la Constitución de los Estados Unidos, *supra*, protege el derecho individual de la ciudadanía a poseer y portar armas de fuego en su hogar para propósitos de defensa propia. Ello es así, pues, el componente central de la Segunda Enmienda es el derecho individual de toda persona a la legítima defensa. *Íd.,* pág. 599.

**Ahora bien, el Máximo Foro Judicial federal también dejó meridianamente claro que la Segunda Enmienda de la Constitución federal, *supra*, no reconoce un derecho a poseer y a portar cualquier arma, de cualquier manera y para cualesquiera propósitos.** *Íd.,* pág. 627. Véase, además, *Rolón Martínez v. Caldero López*, 201 DPR 26, 37 (2018). **Es decir, reconoció que este derecho no es absoluto ni ilimitado** ("There seems to us no doubt, on the basis of both text and history, that the Second Amendment conferred an individual right to keep and bear arms. Of course, the right was not unlimited, just as the First Amendment's right of free speech was not,

---

[4] Anteriormente, y por mucho tiempo, existió un extenso debate respecto a si el derecho que emana de la Segunda Enmienda, *supra*, debía interpretarse desde un enfoque colectivo (*state's right approach*) o un enfoque individual (*individual right approach*). Véase, por ejemplo, R. D. Rotunda & J. E. Nowak, *Treatise on Constitutional Law: Substance and procedure*, 5th ed., West, 2012, Vol. 2, pág. 702; G. L. Shelton, *In Search of the Lost Amendment: Challenging Federal Firearms Regulation through the "State's Right" Interpretation of the Second Amendment*, 23 Fla. St. U.L. Rev. 105 (1995).

see, *e.g., United States v. Williams,* 553 U.S. 285, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008). Thus, we do not read the Second Amendment to protect the right of citizens to carry arms for *any sort* of confrontation, just as we do not read the First Amendment to protect the right of citizens to speak for *any purpose*"). *District of Columbia v. Heller, supra,* págs. 595 y 626.

A tenor, en *District of Columbia v. Heller*, *supra*, el Tribunal Supremo de los Estados Unidos identificó ciertas instancias, en las que la reglamentación o las limitaciones al referido derecho constitucional se presumen válidas. A estas instancias las llamó prohibiciones tradicionales o "*longstanding prohibitions*". *Íd.* Lo anterior, incluyó medidas que prohíban la posesión de armas a aquellas personas que son incapaces mentales o convictos por delitos graves;[5] en lugares

---

[5] En *Tyler v. Hillsdale County Sheriff's Department*, 837 F.3d 678 (6to Cir. 2016), el Sexto Circuito de Apelaciones sostuvo que una ley federal que prohibía la posesión y portación de armas a personas previamente recluidas en una institución mental en la aplicación podría constituir una violación a la Segunda Enmienda de la Constitución federal bajo el escrutinio intermedio.

Por otro lado, en *U.S. v. Moore*, 666 F.3d 313 (4to Cir. 2012), el Cuarto Circuito de Apelaciones sostuvo que la prohibición a la posesión y portación de armas a personas convictas de delito grave no viola la Segunda Enmienda de la Constitución federal, pues es una medida presuntamente válida conforme a *District of Columbia v. Heller, supra*.

Asimismo, en *U.S. v. Williams*, 616 F.3d 685 (7mo Cir. 2010), el Séptimo Circuito de Apelaciones determinó que la prohibición a la posesión y portación de armas a una persona convicta por delito grave era una medida presuntamente válida. Añadió, que criminalizar la posesión y portación de armas de una persona convicta de un delito grave sobrevivía el escrutinio intermedio.

Por su parte, el Octavo Circuito de Apelaciones ha sostenido la constitucionalidad de las convicciones por posesión ilegal de armas de convictos por delito grave, mas no bajo una orden de protección. *US v. Bena*, 664 F.3d 1180 (8vo Cir. 2011). Véase, *US v. Woosley*, 759 F.3d 905 (8vo Cir. 2014); *US v. Seay*, 620 F.3d 919 (8vo Cir. 2010); *United States v. Hughley*, 691 Fed. Appx 278 (8vo Cir. 2017) (sin publicar); *United States v. Taylor*, 695 Fed. Appx 988 (8vo Cir. 2017) (sin publicar).

sensitivos, como las escuelas o edificios de gobierno; o que impongan ciertas cualificaciones para la venta de armas.[6] *Íd., págs. 626-627.*

**No obstante, el Máximo Foro Judicial federal explicó que la lista de regulaciones o limitaciones al ejercicio de la Segunda Enmienda antes mencionada no era exhaustiva, sino meramente ilustrativa** ("We identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive."). *Íd.,* pág. 627, esc. 26. Asimismo, ese Foro federal también mencionó que debía quedar claro que la aludida garantía constitucional se debía extender a las armas de uso común, mas no necesariamente a aquellas armas que se estimen inusuales y peligrosas.[7] *Íd.,* pág. 627.

---

[6] En específico, el Tribunal Supremo de los Estados Unidos expresó:

> **[N]othing in our opinion should be taken to cast doubt on long standing <u>prohibitions on the possession of firearms</u> by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.** (Énfasis y subrayado suplido). *District of Columbia v. Heller*, *supra*, págs. 626-627.

[7] Respecto a la restricción a la portación y posesión de armas inusuales y peligrosas el Tribunal Supremo de los Estados Unidos expresó:

> **We also recognize another important limitation on the right to keep and carry arms.** *Miller* said, as we have explained, that the sorts of weapons protected were those "in common use at the time." 307 U.S., at 179, 59 S.Ct. 816. **We think that limitation is fairly supported by the historical tradition of prohibiting the carrying of "dangerous and unusual weapons."** See 4 Blackstone 148-149 (1769); 3 B. Wilson, Works of the Honourable James Wilson 79 (1804); J. Dunlap, The New-York Justice 8 (1815); C. Humphreys, A Compendium of the Common Law in Force in Kentucky 482 (1822); 1 W. Russell, A Treatise on Crimes and Indictable Misdemeanors 271-272 (1831); H. Stephen, Summary of the Criminal Law 48 (1840); E. Lewis, An Abridgment of the Criminal Law of the United States 64 (1847); F. Wharton, A Treatise on the Criminal Law of the United States 726 (1852). See also *State v. Langford,* 10 N.C. 381, 383-384 (1824); *O'Neill v. State,* 16 Ala. 65, 67 (1849); *English v. State,* 35 Tex. 473, 476 (1871); *State v. Lanier,* 71 N.C. 288, 289 (1874). (Énfasis suplido). *Íd.,* pág. 627.

Resuelto el caso *District of Columbia v. Heller*, *supra*, dos años después, el Máximo Foro Judicial federal se enfrentó a la pregunta de si el derecho bajo la Segunda Enmienda reconocido en el precitado caso debía extenderse a los estados. Esta vez, en *McDonald v. City of Chicago, III.,* 561 US 742 (2010), el aludido Foro federal evaluó la constitucionalidad de ciertas ordenanzas promulgadas en la ciudad de Chicago y Oak Park, en el estado de Illinois, que prohibían la posesión de armas de fuego, salvo que el poseedor tuviese un certificado de registro del arma. Las referidas ordenanzas de control de armas prohibían el registro de la mayoría de las armas cortas, lo que, a juicio de los demandantes constituía una prohibición absoluta a la posesión y portación de armas cortas.

Ante la impugnación de una ley estatal al amparo de la Segunda Enmienda de la Constitución federal, *supra*, el Tribunal Supremo de los Estados Unidos, en primer lugar, pasó juicio sobre si procedía o no la aplicación de la referida disposición constitucional a los estados de la Unión. **Examinada la naturaleza del derecho constitucional a poseer y**

---

Cónsono con lo anterior, en *U.S. v. One (1) Palmetto State Armory PA-15 Machinegun...*, 822 F.3d 136 (3er Cir. 2016), el Tercer Circuito de Apelaciones resolvió que las ametralladoras ("machine guns") no están protegidas por la Segunda Enmienda de la Constitución de los Estados Unidos, *supra*. Asimismo, en *Kolbe v. Hogan*, 849 F.3d 114 (4to Cir. 2017), dicho foro sostuvo la constitucionalidad de una ley que prohibía la posesión de armas de asalto ("assault weapons") y de armas con cargador de alta capacidad ("large capacity magazines") pues éstas no están cobijadas por la Segunda Enmienda de la Constitución federal, *supra*.

De otra parte, en *Hollis v. Lynch*, 827 F.3d 436 (5to. Cir. 2016), el Quinto Circuito de Apelaciones resolvió que las ametralladoras constituyen armas inusuales y peligrosas.

**portar armas a la luz de lo resuelto en *District of Columbia v. Heller, supra*, el Máximo Foro Judicial federal concluyó que, en efecto, éste es un derecho fundamental que, en virtud de la cláusula del debido proceso de ley de la Decimocuarta Enmienda de la Constitución de los Estados Unidos, *supra*, se extiende a los estados de la Unión.** Al respecto, el Tribunal Supremo de los Estados Unidos expresó lo siguiente:

> Under our precedents if a Bill of Rights guarantee is fundamental from an American perspective, then, unless *stare decisis* counsels otherwise, that guarantee is fully binding on the states and *thus* limits (but by no means eliminates) their ability to devise solutions to social problems that suit local needs and values. *McDonald v. City of Chicago, III., supra*, págs. 784-785.

Así pues, a partir de lo resuelto en *McDonald v. City of Chicago, III., supra*, los estados de la Unión y sus territorios no pueden limitar de forma absoluta la posesión y portación de armas cortas. En consecuencia, se declaró la inconstitucionalidad de las ordenanzas de la ciudad de Chicago y Oak Park allí impugnadas.

**Nótese que, en ambos casos, -- *District of Columbia v. Heller, supra,* y *McDonald v. City of Chicago, III., supra* --, el Máximo Foro Judicial federal si bien pautó que existe un derecho individual a poseer y a portar armas para propósito de defensa propia, también reconoció que éste no es absoluto, por lo que validó determinadas regulaciones o limitaciones de ese derecho según dispuesto en la Segunda Enmienda de la Constitución federal, *supra*.** Sin embargo, dicho Foro federal no aclaró cuál debía ser el estándar de revisión o el análisis que los tribunales debían emplear al enfrentarse a

controversias al amparo de la Segunda Enmienda de la Constitución federal, *supra*. Véase, *District of Columbia v. Heller, supra*; *McDonald v. City of Chicago, supra*. En otras palabras, la selección del análisis aplicable a las controversias que planteen violaciones al derecho consagrado en la precitada enmienda constitucional fue dejada para otro momento. *Íd.*

Desde entonces la mayoría de los tribunales federales y estatales habían aplicado un análisis de dos pasos.[8] *Gould v. Morgan,* 907 F.3d 659 (1er Cir. 2019); *United States v. Jimenez*, 895 F.3d 228 (2do Cir. 2018); *Tyler v. Hillsdale County Sheriff's Department*, 837 F.3d 678 (6to Cir. 2016); *US v. Chovan*, 735 F.3d 1127 (9no Cir. 2013); *National Rifle Ass'n of America, Inc. v. McCraw*, 719 F.3d 338 (5to Cir. 2013); *Ezell v. City of Chicago*, 651 F.3d 684, 701–04 (7mo Cir. 2011); *United States v. Chester*, 628 F.3d 673, 680 (4to Cir. 2010); *United States v. Reese*, 627 F.3d 792, 800–01 (10mo Cir. 2010); *United States v. Marzzarella*, 614 F.3d 85, (3er Cir. 2010).[9] Véase, además, David B. Kopel & Joseph G. S. Greenlee, *The Federal Circuits' Second Amendment Doctrines,* 61 St. Louis

---

[8] En *US v. Marzzarella,* 614 F.3d 85 (3er Cir. 2010), el Tercer Circuito de Apelaciones formuló y adoptó el **análisis de dos pasos** amparado, en parte, en lo resuelto por el Tribunal Supremo de los Estados Unidos en *District of Columbia v. Heller, supra*, y el análisis aplicado en los casos relacionados a la Primera Enmienda de la Constitución de los Estados Unidos en los que se cuestionaba si la expresión estaba protegida o no. Paulatinamente, la mayoría de los foros apelativos federales adoptaron dicho análisis.

[9] Véase, además, Eric Ruben & Joseph Blocher, *From Theory to Doctrine: An Empirical Analysis of the Right to Keep and Bear Arms After Heller,* 67 Duke L.J. 1433 (2018); Alice Marie Beard, *Resistance by Inferior Courts to Supreme Courts Second Amendment Decisions*, 81 Tenn. L. Rev. 673 (2014); Alan Gura, *The Second Amendment as a Normal Right*, 127 Harv. L. Rev. 223, 229 (2013-2014).

U. L.J. 197 (2017). En esencia, el *primer paso* del referido análisis requería determinar si la regulación en controversia restringía una conducta al amparo de la Segunda Enmienda, *supra*. Para ello se debía evaluar si la medida era un *longstanding regulation* o si tradicional e históricamente se había reconocido como protegida por la Segunda Enmienda de la Constitución de los Estados Unidos, *supra*. Si luego de aplicar este primer paso se concluía que la regulación en controversia estaba dentro del alcance de la Segunda Enmienda de la Constitución federal, *supra*, correspondía entonces, y como *segundo paso*, discernir si el escrutinio adecuado para revisar la ley o reglamentación impugnada era el escrutinio intermedio o el escrutinio estricto. Véase, por ejemplo, *Hamilton v. Pallozzi*, 848 F.3d 614 (4to Cir. 2017); *US v. Chovan*, *supra*; *National Rifle Ass'n of America, Inc. v. McCraw*, *supra*.

Ahora bien, tan reciente como el pasado verano del corriente año 2022, el Tribunal Supremo de los Estados Unidos, en el caso *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), tuvo la oportunidad de aclarar el estándar de análisis que debemos emplear los tribunales al atender controversias en las que se impugne una restricción al derecho protegido bajo la Segunda Enmienda, *supra*. En esa ocasión, el referido Foro federal se enfrentó a la pregunta de si el criterio de "proper cause" contemplado en el régimen para otorgar una licencia de armas en el estado de New York -- el cual exigía que la persona que solicitara una licencia para poseer y portar un arma en un espacio público o fuera de

su casa demostrara una *necesidad especial* para autoprotegerse distinguible de la comunidad en general--, violaba o no la Segunda Enmienda de la Constitución federal, *supra*.

De entrada, y al abordar la controversia que tenía ante su consideración, el Máximo Foro Judicial federal sentenció que, -- toda vez que en *District of Columbia v. Heller, supra,* y en *McDonald v. City of Chicago, III., supra*, habían reconocido que la Segunda y Decimocuarta Enmienda de la Constitución de los Estados Unidos, *supra*, protegían el derecho de los ciudadanos y las ciudadanas, respetuosos de la ley, a poseer y portar armas en su casa para propósito de defensa propia --, ésta vez resolvían que las precitadas enmiendas constitucionales también aseguraban el derecho de poseer y portar armas fuera de la casa, entiéndase en un espacio público ("we recognized that the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense. In this case, petitioners and respondents agree that ordinary, law-abiding citizens have a similar right to carry handguns publicly for their self-defense. We too agree, and now hold, consistent with Heller and McDonald, that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home."). *Íd.*, pág. 2122.

Con igual tono concluyó que, puesto que cuarenta y tres (43) estados de la Unión expedían licencias de armas basados en un examen de criterios objetivos, mientras que solo seis

(6) estados, entre ellos New York, condicionaban la expedición de la licencia para portar arma a aquellos ciudadanos que mostraran una necesidad especial adicional, este último criterio discrecional violaba la Constitución federal. *Íd*. Es decir, que el criterio de necesidad especial contenido en el régimen de licencia del estado de New York contravenía lo dispuesto en la Segunda Enmienda, *supra*.

El Tribunal Supremo de los Estados Unidos llegó a dichas conclusiones luego de aclarar que, el análisis de dos pasos que por años habían desarrollado y empleado los tribunales apelativos federales, -- al cual hicimos referencia previamente --, no encontraba apoyo en sus anteriores pronunciamientos relacionados a la regulación del derecho protegido por la Segunda Enmienda de la Constitución federal, *supra*. En palabras de ese Tribunal:

> In *Heller* and *McDonald*, we held that the Second and Fourteenth Amendments protect an individual right to keep and bear arms for self-defense. In doing so, we held unconstitutional two laws that prohibited the possession and use of handguns in the home. In the years since, the Courts of Appeals have coalesced around a "two-step" framework for analyzing Second Amendment challenges that combines history with means-end scrutiny.
>
> Today, we decline to adopt that two-part approach. *Íd*., págs. 2125-2126.

Consecuentemente, el Máximo Foro Judicial federal aprovechó la oportunidad para delinear el análisis que los tribunales deben emplear al momento de examinar un planteamiento de regulación o limitación del derecho a poseer y portar armas para propósito de defensa propia o en la

eventualidad de una confrontación.[10] **Así, pues, en *New York State Rifle & Pistol Association, Inc. v. Bruen*, *supra*, el Tribunal Supremo de los Estados Unidos estableció -- en este contexto -- que: 1) cuando la conducta de un individuo esté protegida por el texto de la Segunda Enmienda, se presumirá que la Constitución protege dicha conducta y, solo entonces, 2) el gobierno o estado deberá justificar la regulación o limitación del derecho consagrado en la referida enmienda constitucional, tras demostrar que la referida regulación o limitación es consistente con la tradición histórica de regulación de armas de fuego en la Nación** ("we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, […] the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command'."). *Íd.*, pág. 2126.[11]

---

[10] De manera ilustrativa, el Foro federal de referencia, dispuso que adoptaban un análisis similar al empleado en los casos que planteaban violaciones al derecho de libertad de expresión dispuesto en la Primera Enmienda de la Constitución de los Estados Unidos. Véase, *New York State Rifle & Pistol Association, Inc. v. Bruen*, *supra*, pág. 2130.

[11] El referido análisis ya ha sido empleado en los tribunales federales inferiores. Véase, por ejemplo, *Oakland Tactical Supply, LLC v. Howell Township, Michigan*, 2022 WL 3137711 (6th Cir. 2022) ("We are unable to apply this standard based on the record and arguments currently before us. The district court should decide, in the first instance, whether Oakland Tactical's proposed course of conduct is covered by the plain text of the Second Amendment.[…] If the district court concludes that Oakland Tactical's proposed course of conduct is covered by the plain text of the

De manera que, frente a una conducta que esté protegida por la Segunda Enmienda de la Constitución federal, *supra*, el estado deberá probar que la regulación o limitación de esa conducta protegida constitucionalmente se justifica por ser consistente con la tradición histórica en materia de regulación de armas de fuego en la Nación. En otras palabras, el estado deberá establecer que existe un entendido histórico que hace permisible la regulación o limitación que se impugna.

En esa línea, el Máximo Foro Judicial federal sostuvo que, de encontrarnos en el escenario antes descrito y para determinar si la regulación cuestionada es consistente con la tradición histórica de regulación de armas de fuego en la Nación, deberá entonces evaluarse: si la regulación moderna e históricamente similares imponen una carga comparable sobre el derecho constitucional a poseer y portar armas para defenderse, y si esa carga se ha justificado de manera semejante ("Therefore, whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified"). *Íd.*, pág. 2133. En ese sentido, el referido

_____

Second Amendment, it should then determine whether historical evidence—to be produced by the Township in the first instance—demonstrates that the Ordinance's shooting-range regulations are consistent with the nation's historical tradition of firearm regulation"); *United States of America v. Giovanni Tilotta*, 2022 WL 3924282 (S.D. California 2022)("[Because] the text of the Second Amendment does not cover Mr. Tilotta's course of conduct [--commercially sell and transfer firearms --] no further analysis is needed"); *United States v. Daniels*, ___F.Supp.3d___, 2022 WL 2654232 (2022)("Statute prohibiting possession of firearms by persons who are unlawful users of controlled substances was constitutional under Second Amendment; right to keep and bear arms was guaranteed to law-abiding citizens, statute was concerned with "unlawful" users of controlled substances, and statute's exception to right to keep and bear arms had long and established history").

Tribunal federal expresó que se trata de realizar un ejercicio de razonamiento analógico o "analogical inquiry". *Íd.* Al respecto, sostuvo que:

> While we do not now provide an exhaustive survey of the features that render regulations relevantly similar under the Second Amendment, we do think that *Heller* and *McDonald* point toward at least **two metrics: how and why the regulations burden a law-abiding citizen's right to armed self-defense.** As we stated in *Heller* and repeated in *McDonald*, "individual self-defense is 'the central component' of the Second Amendment right." (Énfasis suplido). *Íd.*, págs. 2132-2133.

En cuanto a este análisis histórico y de razonamiento analógico, el Tribunal Supremo de los Estados Unidos también enfatizó que al emprender esa tarea debe identificarse una analogía bien establecida e históricamente representativa ("analogical reasoning under the Second Amendment is neither a regulatory straightjacket nor a regulatory blank check. On the one hand, courts should not 'uphold every modern law that remotely resembles a historical analogue,' because doing so 'risk[s] endorsing outliers that our ancestors would never have accepted.' […]. On the other hand, analogical reasoning requires only that the government identify a well-established and representative historical analogue, not a historical twin. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster."). *Íd.*, pág. 2133. Adviértase que no se trata de identificar estatutos idénticos, sino de buscar regulaciones suficientemente análogas para superar el examen constitucional.

A manera de ejemplo, el Máximo Foro Judicial federal aludió a los lugares sensitivos o "sensitive places" descritos en el caso de *District of Columbia v. Heller, supra*, como las escuelas o centros de gobierno, en donde históricamente se han prohibido la portación de armas. A esos efectos, el Tribunal federal explicó que, "we therefore can assume it settled that these locations were 'sensitive places' where arms carrying could be prohibited consistent with the Second Amendment. And courts can use analogies to those historical regulations […] to determine that [those] modern regulations prohibiting the carry of firearms in new and analogous sensitive places are constitutionally permissible." *New York State Rifle & Pistol Association, Inc. v. Bruen, supra*, pág. 2133.

Así las cosas, -- y en lo relacionado a la controversia ante su consideración -- el Tribunal Supremo de los Estados Unidos, tras emplear el análisis antes reseñado, en primer lugar, resolvió que la conducta pretendida por los allí peticionarios -- a saber, portar un arma de fuego en público para defenderse -- estaba protegida por el texto de la Segunda Enmienda, *supra*. *Íd.*, pág. 2134. En consecuencia, y, en segundo lugar, el estado de New York debía demostrar que el criterio de "proper cause" o necesidad especial exigido en su régimen de otorgación de licencia de armas era uno consistente con la tradición histórica de regulación de armas de fuego en la Nación. *Íd.*, pág. 2135.

Realizado dicho análisis, el Foro federal aludido concluyó que el estado de New York falló en demostrar esa consistencia con el entendido que históricamente se había tenido sobre los criterios para otorgar licencias de armas a través de la Nación ("We conclude that respondents have failed to meet their burden to identify an American tradition justifying New York's proper-cause requirement. Under Heller's text-and-history standard, the proper-cause requirement is therefore unconstitutional"). *Íd.*, págs. 2138 y 2156. Razón por la cual, bajo el análisis aplicable (*text-and-history*), el requerimiento de "proper cause" o necesidad especial exigido por el estado de New York era inconstitucional.

Al respecto, el Máximo Foro Judicial federal sentenció que:

> **Throughout modern Anglo-American history, the right to keep and bear arms in public has traditionally been subject to well-defined restrictions governing the intent for which one could carry arms, the manner of carry, or the exceptional circumstances under which one could not carry arms.** But apart from a handful of late-19th-century jurisdictions, the historical record compiled by respondents does not demonstrate a tradition of broadly prohibiting the public carry of commonly used firearms for self-defense. **Nor is there any such historical tradition limiting public carry only to those law-abiding citizens who demonstrate a special need for self-defense.** (Énfasis suplido). *Íd.*, pág. 2138.

Dicho ello, es menester mencionar aquí que el Tribunal Supremo de los Estados Unidos, al disponer de las controversias plateadas en *New York State Rifle & Pistol Association, Inc. v. Bruen*, *supra*, reiteró que "[f]rom

Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Íd.*, pág. 2128. En otras palabras, que el derecho protegido en la Segunda y Decimocuarta Enmienda, *supra*, como la mayoría de los derechos, no es absoluto ni ilimitado. *Íd.*

Es, pues, a la luz de la normativa antes expuesta que procedemos a disponer de las controversias ante nuestra consideración.

IV.

Como mencionamos anteriormente, en el presente caso los señores Rodríguez López, Rivera Caraballo y Rodríguez Rodríguez impugnaron la constitucionalidad del Art. 5.04 de la Ley de Armas de Puerto Rico de 2000, *supra,* pues, a su juicio, el requerimiento de una licencia para poseer y portar armas en su aplicación resulta ser una prohibición absoluta al derecho fundamental reconocido en la Segunda Enmienda de la Constitución de los Estados Unidos, *supra*, y su jurisprudencia interpretativa. No les asiste la razón.

Y es que, al emplear el análisis establecido por el Máximo Foro Judicial federal en *New York State Rifle & Pistol Association, Inc. v. Bruen*, *supra*, queda claramente demostrado que si bien lo dispuesto en el Art. 5.04 de la Ley de Armas de Puerto Rico de 2000, *supra*, pudiera representar una regulación o limitación al derecho consagrado en el texto de la Segunda Enmienda de la Constitución federal, *supra*, tal

regulación o limitación supera el análisis empleado en el precitado caso, por existir un entendimiento histórico en cuanto a la validez de la exigencia de una licencia de armas. Nos explicamos.

**Sobre esto último, entiéndase las regulaciones que requieren una licencia para poseer y portar armas de fuego, basta con señalar que desde *District of Columbia v. Heller, supra,* y según reiterado en el normativo caso *New York State Rifle & Pistol Association, Inc. v. Bruen*, *supra*, el Tribunal Supremo de los Estados Unidos ha advertido que nada de lo allí pautado debía interpretarse como una sugerencia de que dichas regulaciones o limitaciones violaban la Segunda Enmienda, *supra*.** *New York State Rifle & Pistol Association, Inc. v. Bruen, supra,* pág. 2138, esc. 9. **Por el contrario, el referido Tribunal federal avaló este tipo de regulación al especificar que no debíamos perder de perspectiva que la exigencia de una licencia de armas, "which often require applicants to undergo a background check or pass a firearms safety course, are designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens'".** *Íd.*[12]

---

[12] Vale también recordar que el Máximo Foro Judicial federal, de manera contundente, sentenció en el caso de referencia que, a través de la historia Anglo-Americana, el derecho a poseer y portar armas -- en el hogar o en público -- tradicionalmente ha sido objeto de restricciones en cuanto a la intención, manera y circunstancias bajo las cuales puede la ciudadanía ejercer ese derecho. *New York State Rifle & Pistol Association, Inc. v. Bruen*, *supra*, pág. 2138. En ese sentido, lo determinante es que la regulación o limitación sobre el derecho a poseer y portar armas no sea absoluta, más sí encuentre apoyo en la tradición histórica en materia de armas.

Ciertamente, tal y como advierte el Máximo Foro Judicial federal, el requerir una licencia o un permiso a la ciudadanía que interese la posesión o portación de armas no es una medida extraña e irregular, ni en Puerto Rico ni en los estados de Estados Unidos. En nuestra jurisdicción, como sabemos desde el Código Penal de 1902; la enmienda a la *Ley prohibiendo portar armas del 9 de marzo de 1905*, en el año 1924; la primera Ley de Armas de 1951; la Ley de Armas de Puerto Rico de 2000, *supra*, y la reciente Ley de Armas de Puerto Rico de 2020, 25 LPRA sec. 461 *et seq.*, se ha permitido la portación de armas a aquellas personas que obtengan una licencia y permiso a esos efectos. Véase, también, 1902 Leyes de Puerto Rico 657-658; 1924 Leyes de Puerto Rico 115; 1951 Leyes de Puerto Rico 427.

Asimismo, y a manera de ejemplo, estados como Carolina del Norte,[13] Hawaii,[14] Illinois,[15] Iowa,[16] Maryland,[17]

---

[13] La ley de armas de Carolina del Norte prohíbe comprar u obtener un arma de fuego sin un permiso de compra o un permiso de portación de armas. Véase, N.C.G.S.A § 14-402.

[14] De la misma forma, Hawaii requiere un permiso para obtener armas de fuego, ya sea mediante compra, regalo, herencia, entre otros. H.R.S. § 134-2.

[15] En Illinois, ninguna persona puede adquirir o poseer un arma de fuego sin tener una "Firearm Owner's Identification card" (FOID) o algún permiso para portar armas de manera oculta. Véase, 430 Ill. Comp. Stat. Ann. 65/2.

[16] Por su parte, en Iowa se le requiere a toda persona que desee ser dueño y portar un arma corta, obtener primero el correspondiente permiso para ello. Véase, I.C.A. §§ 724.11 -724.19.

[17] Asimismo, Maryland requiere un permiso emitido por el o la Secretaria de Estado para que una persona pueda portar o transportar un arma corta. Véase, M.D. Code, Criminal Law § 4-201.

Massachusetts,[18] Nebraska,[19] Nueva Jersey[20] y Rhode Island[21] -
- de forma análoga a nuestra jurisdicción -- requieren una
licencia o permiso para comprar, poseer o portar armas.

No albergamos duda alguna, pues, de que la limitación
que impone el Art. 5.04 de la Ley de Armas de Puerto Rico de
2000, *supra*, al derecho garantizado en la Segunda Enmienda de
la Constitución de Estado Unidos, *supra*, -- el cual nos es
extensivo en virtud de la Decimocuarta Enmienda de esa
constitución, *supra* --, es consistente con la tradición
histórica de regular las armas de fuego nacionalmente mediante
la exigencia de una licencia o permiso. El requerimiento de
licencia para poseer y portar armas en Puerto Rico, -- al
igual que sucede en otras jurisdicciones de la Nación --, solo
persigue la política pública de cero tolerancia contra el
crimen; lograr que las agencias de orden público sean más
efectivas en esa lucha; y promover mayor seguridad y bienestar
público para el Pueblo.

Consecuentemente, concluimos que el artículo aquí bajo
estudio es constitucional al amparo de la Segunda Enmienda de

---

[18] En el estado de Massachusetts existen tres (3) tipos de licencia:
"Firearm Identification Cards" (FIDs), las cuales permiten la adquisición
de rifles y escopetas; licencia para portar armas de fuego y permiso para
comprar o arrendar armas de fuego. Véase, M.G.L.A. 140 §§ 129B, 131E.

[19] Nebraska le requiere a los ciudadanos o a las ciudadanas un certificado
o permiso para portar, para comprar, arrendar o para que se les transfiera
la titularidad de un arma de fuego. Véase, Neb. Rev. St. § 69-2404.

[20] Nueva Jersey requiere un permiso de compra, un "Firearms Purchaser
Identification Card (FPIC), o un permiso de portación de armas para que
una persona pueda comprar y portar un arma de fuego en dicho estado.
Véase, N.J.S.A. 2C:39-5, 2C:58-3, 2C:58-4.

[21] Igualmente, Rhode Island prohíbe la portación de armas sin licencia
excepto en el hogar o el lugar de trabajo. 11 R.I. Gen. Laws Ann. § 11-
47-8.

la Constitución de los Estados Unidos, *supra*. Erró, pues, el Tribunal de Apelaciones al resolver lo contrario.

## V.

Por los fundamentos antes expuestos, revocamos la determinación del Tribunal de Apelaciones que declara inconstitucional el Art. 5.04 de la Ley de Armas de Puerto Rico de 2000, *supra*.

Se dictará sentencia de conformidad.

Ángel Colón Pérez
*Juez Asociado*

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>    Apelante<br><br>       v.<br><br>Roberto Rodríguez López<br><br>    Apelado<br>_____<br>El Pueblo de Puerto Rico<br><br>    Apelante<br><br>       v.<br><br>Luis Rivera Caraballo<br><br>    Apelado<br>_____<br>El Pueblo de Puerto Rico<br><br>    Apelante<br><br>       v.<br><br>Alvin Rodríguez Rodríguez<br><br>    Apelado | AC-2017-0103 |

SENTENCIA

En San Juan, Puerto Rico a 28 de octubre de 2022.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, revocamos la determinación del Tribunal de Apelaciones que declara inconstitucional el Art. 5.04 de la Ley de Armas de Puerto Rico de 2000, *supra*.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.


                          Javier O. Sepúlveda Rodríguez<br>                          Secretario del Tribunal Supremo